Marine Bank of Chicago v. Auditor of State.

---

THE MARINE BANK OF CHICAGO *v.* THE AUDITOR OF STATE.

APPLICATION FOR A MANDAMUS.

Stocks of the State of Illinois, deposited with the treasurer, under the provisions of the general banking law, are not, while so deposited, entitled to share in the distribution of the two mill tax.

The auditor has authority to allow banks to withdraw stocks transferred by them, upon receiving an ample equivalent in other securities of the kind designated in the law.

THIS was a petition for a mandamus to the Supreme Court at its session in December term, 1852, to be directed to the auditor, commanding him to pay to the Marine Bank a distributive share of the two mill tax, levied under the constitution, for the purpose of liquidating the State debt.

The bonds had been deposited with the auditor under the general banking law, and remained in his custody as depositary.

16*

J. Y. SCAMMON, D. L. GREGG, and E. PECK, for petitioners.

N. H. PURPLE, for the auditor.

TREAT, C. J.   It is the leading feature of the " Act to establish a general system of banking," that the notes of the banks shall be at all times fully secured by a pledge of public stocks. Securities of this character form the basis of their circulation. The notes are provided by the auditor, and registered in his office.   Banks are not permitted to issue any other notes in the way of circulation.   Before a bank can obtain notes from the auditor, it must deliver to him an amount of public stocks sufficient for their ultimate redemption.   The securities are devoted to the redemption of the notes, and are beyond the control of the institution.   The legal title to the securities is vested in the auditor, and they are then deposited with the treasurer for safe-keeping.   If·the bank fail to redeem its notes in specie, it is the duty of the auditor to sell the securities at public auction, and apply the proceeds to the payment of the notes.   He may withdraw the securities for the purpose of having them disposed of for the same object, under the decree of a court.   He may return them to the bank, on the surrender of a like amount of its circulating notes, or on the delivery of a full equivalent in other stocks.   These are the only purposes for which the securities can be withdrawn from the custody of the treasurer.   As circulating notes cannot be obtained in the first instance by the transfer of any other securities than public stocks, so money cannot afterwards be substituted for such securities.   The object of the present proceeding is virtually to accomplish that result.   If the bonds deposited by the relator are to participate in the distribution of the two mill tax, they will be extinguished to the extent of the payments made upon them, and. the money will remain in the treasury in lieu of the securities.   In·such event, money, and not public stocks, will constitute the basis of the circulation.   But, it is said, that money, is a better security for the redemption of the notes, than mere obligations for the payment of money.   That, however, is not the true question in the case. It is enough, that the act requires other and different security. This requirement is clearly imperative, and in no sense discretionary.   Neither the auditor, nor the court, has any power to dispense with its performance.   The reason of the provision rests with the legislature and the people who made the law, and not with those by whom it is to be administered.   The framers of the law doubtless considered a pledge of public stocks a safer security for the redemption of the circulating notes, than a

deposit of specie. Such securities are kept with less difficulty than money, and they are not as subject to loss from fraud or casualty. Money may be embezzled by those intrusted with its possession, or destroyed by the elements, or lost by larceny. It has no ear-marks, and is therefore not easily identified and reclaimed. A loss from any of these causes, might deprive the holders of the circulating notes of their indemnity. Not so with a transfer of public securities. If embezzled, or stolen, the obligations can be identified and recovered; and payment may in the mean time be prevented by giving notice to the obligors. If destroyed, the loss can be established, and payment ultimately obtained. Descriptive lists of the securities are lodged in different places, and the means of identification are therefore ample. As the charter of a bank may run for twenty-five years, and its notes continue to circulate for that period of time, a transfer of public stocks is, in many respects, a safer security for the redemption of the circulation, than a deposit in money.

The 13th section of the act is principally relied on to sustain this application. It reads thus : " The auditor may give to any person or association of persons, so transferring stocks, in pursuance of the provisions of this act, powers of attorney to receive interest or dividends thereon, and apply the same to their own use, but such powers may be revoked upon such person or association failing to redeem the circulating notes so issued, or whenever, in the opinion of the auditor, the principal of such stock shall become insufficient security." The substance of this provision is, that a bank may collect for its own use the interest accruing on the stocks transferred, while it continues to redeem its circulating notes on demand, and the principal continues to be an adequate security for their redemption. This is the scope and intent of the provision. The terms "interest" and "dividends" are used as synonymous expressions. And they are not improperly employed to signify the same thing — the distribution of interest on the stocks. It is clear from the latter clause of the provision, that there is not to be any diminution of the principal. It was not the intention to permit a bank to collect any part of the principal of the securities, for it is expressly allowed to appropriate to its own use whatever it may receive under the authority of the auditor. The effect, therefore, of permitting it to receive payments on account of the principal, might be to deprive the public of all security for the redemption of the circulation. Such a construction would be inconsistent with the general purposes of the law. It would virtually destroy the chief feature of the system, — that of securing the redemption of the circulating

notes by a pledge of public stocks. It might enable a bank to withdraw the basis of its issues, without redeeming any portion thereof. The auditor has not the power to allow a bank to receive any other payments on the securities than the accruing interest. The principal is appropriated to a specific purpose, and until that purpose is accomplished, it is not to be impaired or reduced by credits. Before a bank can obtain payment of the principal, it must return its circulating notes, or transfer other securities of the kind mentioned in the act. These are the only modes by which it can repossess the securities, and receive any payments thereon but the interest.

The securities transferred by the relator exceeded in amount the circulating notes received from the auditor; and it therefore claims the right to present the Illinois bonds included in the transfer, and share in the proceeds of the two mill tax to the extent of the excess. But the bank is not in a position to claim any portion of this fund. The constitution requires it to be distributed among such of the creditors of the State, as present their bonds for the purpose on the 1st day of January. The bank did not present any bonds to the auditor on that day, and consequently cannot participate in the distribution of the fund. It should have withdrawn the excess of the deposit in Illinois bonds, and presented them to the auditor for payment, before the time limited for the presentation of State indebtedness had expired. Until actually separated from the mass of securities transferred by the bank, these bonds form a part of the fund pledged for the redemption of its circulating notes, and must remain in the custody of the treasurer. While thus deposited, the bank has no power to present any of the securities to the auditor. The whole are in the rightful possession of the treasurer, and until the bank exercises its privilege of recalling the surplus, none of them can be presented for payment. If the bank had applied to the auditor, and obtained leave to withdraw the excess in Illinois bonds, the securities thus withdrawn might have been presented, and taken into consideration in the distribution of the two mill tax. The notice to the auditor and treasurer did not amount to such withdrawal and presentment. The bank did not even ask to recall any part of the securities. It merely claimed the right to present the Illinois bonds *en masse*, and receive dividends upon them. It had not the right to withdraw all of these bonds, for they largely exceeded in amount the surplus of the deposit. It might have obtained payments upon a portion of them, if it had regained the possession of particular bonds, and presented them for the purpose.

The court decide the following points. 1. Stocks of the

Marine Bank of Chicago v. Auditor of State.

State of Illinois deposited with the treasurer, under the provisions of the general banking law, are not, while so deposited, entitled to share in the distribution of the two mill tax. 2. The auditor has authority to allow banks to withdraw stocks transferred by them, upon receiving an ample equivalent in other securities of the kind designated in the law. These are the only questions which the court is called upon to decide in the case.

The demurrer is overruled, and the application for a mandamus is denied.

CATON, J. I think the auditor, upon the request of the institution, is authorized to draw dividends upon the principal of stocks deposited with him for banking purposes, so as he does not thereby reduce the principal of the stocks deposited below that required by the statute, for the security of the bills which he has delivered to the institution, and which have not been returned to be cancelled. Hence he should make a dividend upon these stocks to the extent of the securities in his hands, upon which bills have not been issued. Should the dividend upon these stocks amount to more than this, I think he would have to curtail it to that extent; for there must, at all times, be stock deposited, the principal of which will be sufficient, according to the estimate prescribed by the general banking law, to secure all the bills outstanding. I am of opinion, that the institution has the right, at any time, to change the securities deposited, or to relieve any portion of them, by the surrender of an amount of circulation equal to that for which the securities to be withdrawn, or satisfied by the receipt of the dividend, were designed to secure. Whether the accruing dividend would be more than the amount upon which no bills have been issued, we do not, nor can we, know; should that turn out to be the case, the dividend could only be made upon such portion of the stock as would be sufficient to absorb the amount of the principal upon which notes have not been issued. The relators might have placed themselves in a position to have required the auditor to draw the whole amount of the dividend, had they, before the 1st of January, deposited a sufficient amount of new securities, or surrendered a sufficient amount of notes, so as to leave the amount of outstanding notes secured by the principal of the stocks remaining on deposit.

*Mandamus denied.*